UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY S. AUSTIN,

               Plaintiff,

vs.

                                         Case No. 07-CV-15127

                                         HON. GEORGE CARAM STEEH

COUNTRYWIDE HOME LOANS,
INC., et al.,

               Defendants.
_____/

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [DOC. 5],
GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
[DOC. 6], DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
[DOCS. 16, 20], GRANTING DEFENDANT COX'S MOTION TO DISMISS [DOC. 42]

FACTUAL BACKGROUND

Plaintiff, Bradley Austin, signed a mortgage ("Mortgage") with his then-wife Deanna Austin on February 28, 2003. The Mortgage was recorded in the Oakland County registrar of deeds on or about May 19, 2003. The Mortgage gave Mortgage Electronic Registration Systems, Inc. ("MERS") legal title to, and the right to foreclose on, the property located at 18251 Hickory Ridge in Fenton, Michigan ("the Property").

Also on February 28, 2003, Deanna Austin signed a note ("Note") with defendant Quicken Loans Inc. ("Quicken"). Plaintiff is neither a signatory nor a borrower under the Note. The Note was subsequently transferred to defendant Countrywide Home Loans, Inc. ("Countrywide").

Under the Note, Deanna Austin owed a payment on the first of every month, commencing on April 1, 2003. Deanna Austin failed to make her payments on January

1, 2006 and February 1, 2006. On February 16, 2006, Countrywide sent a "Notice of Default and Acceleration" to Deanna Austin stating that she was in default in the amount of $1,975.76 and demanding that she cure by March 18, 2006. Deanna Austin did cure the default with payments made on or about February 27, 2006 and March 2, 2006. However, she failed to make her payments due on March 1, 2006 and April 1, 2006. Again, on April 17, 2006, Countrywide sent another "Notice of Default and Acceleration" to Deanna Austin stating that she was in default and demanding that she cure the default by May 17, 2006. Deanna Austin has not made a payment on the Note since March 2, 2006.

Approximately a year later, MERS commenced foreclosure proceedings. A notice of the foreclosure was posted at the Property on April 18, 2007 and a copy of the notice was published in the Oakland County Legal News on April 17, 2007, April 24, 2007, May 1, 2007 and May 8, 2007. The foreclosure sale was held on June 5, 2007 and the Property was purchased by MERS. The redemption amount at the time of the foreclosure sale was $141,406.61. The Property was subsequently quit claimed to Countrywide on July 17, 2007. The redemption period expired on December 5, 2007.

On or about December 11, 2007, Countrywide, through its counsel, defendant Trott & Trott, filed a petition to evict the occupants of the Property in 52-2 District Court located in Clarkston, Michigan ("State Court Action"). A hearing was held in front of the Hon. Dana Fortinberry on December 20, 2007 and Countrywide's petition to evict was granted. The day before the hearing, Austin attempted to remove the State Court Action to this Court. This Court remanded the matter to state court on January 4, 2008.

On January 24, 2008, Judge Fortinberry upheld her judgment of December 20, 2007 evicting the occupants from the Property.

On December 3, 2007, Austin filed the Complaint in this action. The Complaint contains thirteen counts and names as defendants Countrywide, MERS, Quicken, Trott & Trott, individual attorneys at Trott & Trott, the Oakland County Sheriff, the Oakland County Clerk and the Director of the Securities and Exchange Commission. A summary of the counts is as follows:

> **Count I** - Austin seeks declaratory judgment "that it is a common, if not almost universal, custom, practice, and/or policy in the financial industry * * * for a Bank or other lending institution on [sic] NEVER to loan its own (bank) funds and ALWAYS to arrange or 'originate' transfers of funds from other sources pursuant to the Chapter 4A.104 of the Uniform Commercial Code and to misrepresent this transaction as a 'loan' for purposes of collection and foreclosure of debts, so that the use of the term 'loan' is always knowingly and intentionally misleading in consumer credit transactions." See, Complaint at ¶ 21.
>
> **Count II** - Austin seeks a declaratory judgment that "Defendants Quicken, Countrywide & MERS routinely if not always conform to and complies with financial industry standards in this regard, and the Defendant Quicken, (the originator) specifically made no loan, but only originated a funds transfer, in the case of Deanna Lynn Austin's original note." See, Complaint at ¶ 22.
>
> **Count III** - Austin seeks a declaratory judgment "that the law of mortgage lending and foreclosure has never been reconciled with this financial industry reality, which was partially (but only partially) authorized and organized under parallel but independent and so unmodified legal schemata or regimes (e.g. the UCC), so that the law and practice of note origination and the law and practice of note collection and foreclosure are out of synch, uncoordinated, and are in fact mutually incompatible with each other, especially (perhaps most obviously but not exclusively) here in the State of Michigan)." See, Complaint at ¶ 23.
>
> **Count IV** - Austin seeks a declaratory judgment "that, as a matter of financial industry custom, practice and/or policy for Banks or Financial Lending Institutions such as Quicken, Countrywide (but not MERS, which

never acquires any interest in a loan note) immediately and always (or almost always) to sell the mortgage notes and other consumer credit notes created or 'issued' by 'borrowers' (such as Deanna Lynn Austin) upon or at the completion of transactions (such as the issuance of mortgage notes) 'originated' by 'lenders' (such as COUNTRYWIDE & MERS). See, Complaint at ¶ 24.

**Count V** - Austin seeks a declaratory judgment "that these notes are, again as a matter of routine financial industry custom, practice, and/or policy sold into regular 'money' or 'securities' markets where they are traded, and that the current owner of a note is rarely if ever known by the 'originator' of the note (e.g. Quicken), and is never (or hardly ever) actually disclosed to the creator, grantor, or issuer of the note (e.g. Deanna Lynn Austin)." See, Complaint at ¶ 24.

**Count VI** - Austin seeks a declaratory judgment "that the financial 'lending' institutions (e.g. the commercial Defendants herein) * * * are more sophisticated and in better position to know and understand both the inconstancies [sic] and incongruities in the law than "borrowers" * * * and that the financial institutions take advantage of borrowers and wrongfully manipulate and control mortgage finance unfairly to disadvantage the consumer, who is kept in the dark and deprived of a full and complete understanding of the credit transactions upon which modern life depends." See, Complaint at ¶ 25.

**Count VII** - Austin seeks a declaratory judgment "that mortgage note trading * * * is so commonly known in financial circles, even if "hidden in plain sight' from the average consumer, that such trading in mortgage notes (and other consumer credit notes) plainly IS and OUGHT TO BE at all times subjects [sic] to the Securities and Exchange laws of the United States of America, including but not limited to SEC Rule 10(b)(5)." See, Complaint at ¶ 26.

**Count VIII** - Austin seeks a declaratory judgment "that mortgage collection and foreclosure by Countrywide and MERS must cease until these Defendants can prove that is now and has at all times been both the legal owner, or 'holder in due course', and the equitable owner entitled to all benefit and enjoyment, of the original note executed by Deanna Lynn Austin, and the Countrywide & MERS must account for and explain the location of the original not if it is no longer in their possession, and must expose the location of the original note if it is no longer in their possession, and must expose their books to audit and accounting regarding the handling of the Austin note both as asset and liability in double entry accounting books." See, Complaint at ¶ 27.

**Count IX** - Austin seeks to enjoin the Oakland County Sheriff "from allowing any eviction proceedings or enforcement of the Sheriff's sale of June 5, 2007, or any other action against Plaintiff in this matter until a complete forensic examination of Deanna Lynn Austin's original note can be made, and that Defendants be ordered and directed to treat the original note as evidence to be preserved and protected." Austin seeks this relief under the declaratory judgment statute. See, Complaint at ¶ 28.

**Count X** - Austin seeks a declaratory judgment that "the commercial defendants in this case, namely Quicken, Countrywide, MERS, Trott & Trott, P.C. and all their named attorneys, have in a Racketeering conspiracy injurious to Plaintiff in his property and business interests, and that they have simultaneously sought unlawfully to use or invoke state processes, including the services of [the Oakland County Sheriff] to effect a taking of Plaintiff's property without due process of law in violation of the 5th and 14th Amendments." See, Complaint at ¶ 29.

**Count XI** - Austin seeks to enjoin all defendants "from filing or pursing any eviction action in Michigan state court * * *." See, Complaint at ¶ 33.

**Count XII** - Austin seeks to compel the Chairperson of the Securities and Exchange Commission to "enforce the provisions of SEC Rule 10b-5 and 15 U.S.C. § 78i in regard to deceptive and manipulative devices in mortgage value or price of securities based, derived, or connect with bundles of FICO-graded mortgage securities, with neither notice nor payment to the original grantors of the notes, nor any notice or disclosure to these (mostly unsophisticated consumer grantors) of their (the consumer's) role in the creation of wealth and issuance of securities." See, Complaint at ¶ 92.

**Count XIII** - Austin seeks to hold Countrywide & MERs "liable for violations of the securities laws of the United States, including SEC Rule 10b-5." See, Complaint at ¶ 104.

**Unnumbered** - Austin seeks declaratory judgment that MERS, Countrywide and Trott & Trott have violated RICO, which should be extended to include the business of lending money.

**Unnumbered** - The defendants have engaged in RICO violations related to the illegal mortgage foreclosure.

Currently before the Court are the following motions: (1) Countrywide and MERS' motion to dismiss, (2) Trott & Trott and individual attorneys' motion for judgment on the

pleadings, (3) Plaintiff's motion for leave to file amended complaint, and (4) the SEC's motion to dismiss.

## STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on an issue of law. To survive a Rule 12(b)(6) motion for dismissal for failure to state a claim, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, - - - U.S. - - -, 127 S.Ct. 1955 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic, 127 S.Ct. at 1964-65. In so holding, the Supreme Court disavowed the traditional Rule 12(b)(6) standard of Conley v. Gibson, 355 U.S. 41, 45-46 (1957) which required the appearance, "beyond a doubt, that plaintiff can prove no set of facts in support of claim that would entitle him to relief." Bell Atlantic, 127 S.Ct. at 1969.

## ANALYSIS

I. Countrywide and MERS' Motion to Dismiss [Doc. 5]

    A. Standing

Plaintiff Bradley Austin is not a borrower under the Note, did not sign the Note and has no interest in the Note. Therefore, plaintiff has no standing to sue under the Note. Counts 1-8, 12 and 13 pertain either to the Note or to lending practices of the mortgage industry. Plaintiff contends that he is the judicially declared assignee of the

rights in the Property, and that this fact should give him standing. Plaintiff's rights in the Property, whatever they may be, are not the same thing as having a personal stake in the Note. Therefore, plaintiff has no standing to ask this Court to exercise its jurisdiction over the Note to make various declaratory judgments relating to the Note or the lending industry practice of selling notes similar to the Note signed by Deanna Austin. There is no evidence in the record that would support plaintiff's personal stake in the Note, and therefore plaintiff has no standing to bring these claims.

B. Actual Controversy

Counts 1-8 and 10 of plaintiff's complaint demand that the Court render declaratory judgments on various allegations regarding the mortgage lending industry. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. provides for relief in situations where relief could not otherwise be granted, but it does not create a basis of jurisdiction where one does not otherwise exist. Skelly Oil Co. v. Phillips Petroleum, 339 U.S. 667, 671-72 (1950) ("The Declaratory Judgment Act . . . is a procedural one that can provide a form of relief but cannot provide an independent basis for subject matter jurisdiction.")

In his complaint, plaintiff asks this Court to make many declaratory judgments regarding lending practices in the United States. The complaint fails to allege any specific present harm or threat of specific future harm to the plaintiff. The only exception is in counts 9 and 11, which deal with plaintiff's possible eviction following foreclosure on his residence.

7

C. Rooker-Feldman Doctrine

The Rooker-Feldman Doctrine stands for the proposition that federal district courts do not have jurisdiction to review a case litigated and decided in state court. Anderson v. Charter Twp. of Ypsilanti, 266 F.3d 487, 492 (6th Cir. 2001). Rooker-Feldman serves as a jurisdictional bar and should be decided before res judicata. Hutcherson v. Lauderdale County, 326 F.3d 747, 754 (6th Cir. 2003).

The Rooker-Feldman doctrine "involves a two-part analysis: (1) whether the federal claims are 'inextricably intertwined' with the claims asserted in the prior state court proceeding, and (2) whether the federal claims allege a specific grievance that the law was improperly applied, for which the *Rooker Feldman* doctrine would apply, as opposed to a general constitutional challenge to the state law applied in the state action." Smith v. Provident Consumer Fin. Servs., 2006 U.S. Dist. LEXIS 48265, *11-12 (E.D. Mich. 2006) (citing Hutcherson at 755-56). "A federal claim is 'inextricably intertwined' with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" Id. at *12 (citing Hutcherson at 756). Therefore, if granting relief on the federal claim would imply that the state court judgment was incorrect, then federal courts do not have jurisdiction. Id. (citing Gilbert v. Ferry, 298 F.Supp.2d 606, 613 (E.D. Mich. 2003)), Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

In this case, the Mortgage was foreclosed under Michigan law and a State district court reached a final judgment on the petition to evict plaintiff and his ex-wife from the Property. Therefore, the State Court necessarily concluded that (1) the foreclosure was proper and rendered Countrywide the owner of the Property; and (2) it was proper

under Michigan law to evict the occupants from the Property, including plaintiff. The relief sought by plaintiff in this lawsuit is to turn back the foreclosure and possess the Property. In order to grant this relief, the Court would have to rule that the State Court did something incorrect in ruling on the petition to evict. This is precisely the type of situation barred under the Rooker-Feldman doctrine.

D. Res Judicata

Plaintiff's arguments come down to one premise, that Countrywide was not entitled to possession of the Property. That issue has already been litigated in the Michigan courts. Under Michigan law, res judicata will bar a subsequent action "when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." Sewell v. Clean Cut Mgmt, 463 Mich. 569, 575 (2001).

In this case, the State Court determined that Countrywide is entitled to possession of the Property. To the extent that plaintiff's complaint attacks the validity of the underlying foreclosure process, seeks to enjoin his conviction, and asserts his right to possess the Property, he is barred by res judicata, and dismissal of the case is warranted.

II. Attorneys' Motion for Judgment on the Pleadings or Summary Judgment [Doc. 6]

Defendants Kelly L. Callard, Shawn C. Drummond, Jennifer Matthew, Jeffrey E. Slavik, Kenneth VanNorwick (referred to collectively as "individual attorneys") and Trott & Trott, P.C. filed a motion for judgment on the pleadings or in the alternative for summary judgment. The individual attorneys named as defendants were or are employees of Trott & Trott during the time period involved, and they carried out tasks on

behalf of the law firm in representing MERS in both the bankruptcy of Deanna Lynn Austin and the foreclosure and eviction cases. Plaintiff accuses the individual attorneys and Trott & Trott of participating in a scheme to defraud, whereby the defendants knowingly agreed and conspired to assist Countrywide and MERS in committing fraud by falsely claiming to be holders in due course of mortgage agreements or notes which had already been sold. Plaintiff thus contends that the foreclosure sale was illegal. This is the basis of plaintiff's RICO claim.

To state a RICO claim, plaintiff must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). Therefore, to establish a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must allege that the RICO enterprise engaged in a "pattern of racketeering activity" consisting of at least two predicate acts of racketeering activity occurring within a ten-year period. The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail and wire fraud statutes. Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006). In this case, plaintiff, in his proposed amended complaint, alleges that Trott & Trott, and the individual attorney defendants, used the mail on multiple occasions during 2007 to commit mail fraud. Specifically, plaintiff refers to the notices of foreclosure, which were sent through the mail, relating to the Property at issue in this case.

The defendants are lawyers who were representing their clients in a proper legal action. In fact, the State Court granted Countrywide's petition to evict based on the

foreclosure sale, and subsequently upheld the eviction. Other than plaintiff's legal conclusions, there is no evidence to support any improper activity by these defendants.

Defendants' motion for judgment on the pleadings is granted.

III. Plaintiff's Motion for Leave to Amend Complaint [Doc. 16, 20]

In Part II of his response brief, plaintiff seeks leave to amend his complaint (DOC. 20), as well as in a separately filed motion for leave to file amended complaint (DOC. 16). Leave to amend a complaint is to be freely granted when justice so requires. Fed. R. Civ. P. 15(a). However, Courts should deny a motion for leave to amend when the amendment is futile and "the amended claim would not survive a motion to dismiss." Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1041-42 (6th Cir. 1991).

Plaintiff attached his proposed first amended complaint, which adds several factual allegations and elaborates on the previously unnumbered RICO claim. However, the amended complaint does not address the deficiencies raised by any of the defendants in their motions to dismiss, and therefore must be denied as futile.

IV. Defendant Cox's Motion to Dismiss [Doc. 42]

Defendant Securities and Exchange Commission ("SEC") Chairman Christopher Cox moves to dismiss plaintiff's complaint because it was not properly served, because it is barred by the doctrine of sovereign immunity, and because it fails to state a claim for which relief may be granted. The complaint against Cox seeks (1) a declaration that mortgage notes are securities and that the resale of mortgage notes by banks without notice and compensation to homeowners violates provision of federal securities laws,

and (2) an enforcement claim to stop the resale of mortgage notes without such notice and compensation.

A. Service of Process

Defendant points out that plaintiff's action is really against the Chairman of the SEC in his official capacity, or rather against the Commission as a whole entity. As such, service must be accomplished on the United States pursuant to Fed. R. Civ. P. 4(i)(2). Service must be completed within 120 days after the complaint is filed. Fed. R. Civ. P. 4(m). In this case, plaintiff filed his complaint on December 12, 2007, so service on the United States was to have been completed by April 10, 2008. If service is not completed within this time frame, the complaint must be dismissed without prejudice.

Plaintiff concedes that he made a mistake in naming the SEC Chairman, and not the entire Commission. Plaintiff states his intention to correct this mistake by amending his complaint. Furthermore, given the opportunity, plaintiff would be able to achieve proper service on the United States. Any dismissal for lack of proper service in this case would be without prejudice. For that reason, the Court will consider defendant's other arguments for dismissal.

B. Sovereign Immunity - Lack of Subject Matter Jurisdiction

The relief that plaintiff seeks - a declaration regarding mortgage notes and an investigation of the mortgage industry - clearly requires action by the Commission and not a single Commissioner. Plaintiff even acknowledges that this case should have been brought against the SEC. In the absence of an express congressional waiver of sovereign immunity, the doctrine bars claims against the United States, its agencies,

and employees, including the SEC and its employees. FDIC v. Meyer, 510 U.S. 471, 475 (1994); SEC v. Independence Drilling Corp., 595 F.2d 1006, 1008 (5th Cir. 1979).

The decision whether to institute enforcement proceedings is committed to the SEC's discretion. The Administrative Procedures Act ("APA") does not allow judicial review of "agency action [that] is committed to agency discretion by law." 5 U.S.C. 701(a)(2). The SEC's decision whether to bring an enforcement action is subject to agency discretion and is consequently unreviewable.

Plaintiff also seeks an SEC declaration that mortgage notes are securities and that the resale of mortgage notes by banks without notice and compensation to homeowners violates some provision of the federal securities laws. The Commission would be required to either interpret Section 3(a)(41) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(41), which contains a detailed definition of the term "mortgage related security," or issue a new rule. In either event, such a request would require rulemaking as it would impose an obligation on the Commission to issue a "rule." Under the Administrative Procedures Act, the exclusive vehicle for a private party seeking the enactment of a rule is to petition the agency to conduct rulemaking. 5 U.S.C. 553(e).

In this case, there is no final agency action for this Court to review. Plaintiff has not submitted a rulemaking petition to the SEC, and the SEC has not issued a final agency order. Therefore, this Court lacks subject matter jurisdiction over the declaration claim.

## CONCLUSION

For all of the reasons stated above, defendants Countrywide and MERS' motion to dismiss is GRANTED. Defendants Trott & Trott and the individual attorneys' motion for judgment on the pleadings is GRANTED. Plaintiff's motion for leave to file first amended complaint is DENIED as futile. Defendant Cox's motion to dismiss is GRANTED.

The Court entered an Order [Doc. 35], stipulated to by the parties, which recognizes that if the Court grants Countrywide and MERS' motion to dismiss, then the claims against Quicken Loans would not continue. Therefore, the only parties remaining in the case are Michael Bouchard, Ruth Johnson, and Oakland County, Michigan.

s/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

Dated: August 13, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on August 13, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee  
Secretary/Deputy Clerk